JEFFREY BOSSERT CLARK
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

DAVID L. WEIGERT
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611 Ben Franklin Station
Washington, DC 20044 7611
Phone:  (202) 514-0133
Fax:  (202) 616 2427
david.weigert@usdoj.gov

For Plaintiff United States of America

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **COMPLAINT** |
| 280 SALEM STREET, LLC; | |
| ATOS IT SOLUTIONS AND SERVICES, INC.; | Civil Action No. 20-cv-11321 |
| BASF CORPORATION; | |
| COGNIS USA LLC; | |
| CONAGRA GROCERY PRODUCTS COMPANY, LLC; | |
| GOULSTON TECHNOLOGIES, INC.; | |
| MURPHY'S WASTE OIL SERVICE, INC. | |
| NSTAR ELECTRIC COMPANY d/b/a EVERSOURCE ENERGY; | |
| ORGANIX, LLC; | |
| OSRAM SYLVANIA, INC.; | |
| PHARMACIA, LLC, BY ITS ATTORNEY- IN-FACT, MONSANTO COMPANY; | |
| THE GILLETTE COMPANY; | |
| THE SHERWIN-WILLIAMS COMPANY; | |
| STEPAN COMPANY; | |
| VARIAN MEDICAL SYSTEMS, INC.; | |
| W.R. GRACE & CO. – CONN. | |
| Defendants. | |

The United States of America, by authority of the Attorney General of the United States, through the undersigned attorneys, acting at the request of the Regional Counsel of the United States Environmental Protection Agency ("EPA") for Region I, files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against the above-captioned Defendants under Sections 106, 107, and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607, and 9613. The United States seeks (a) recovery of response costs, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), it has incurred in conducting response activities in connection with the release or threatened release of hazardous substances into the environment at or from Operable Unit 4 ("OU4"), also known as the "Southwest Properties," of the Wells G&H Superfund Site, located in Woburn, Massachusetts ("Site"); (b) a declaratory judgment, under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding that all Defendants will be liable for any further response costs the United States may incur as a result of a release or threatened release of hazardous substances into the environment at or from OU4; and (c) injunctive relief, under Section 106 of CERCLA, 42 U.S.C. § 9606, requiring that Defendants take action to abate conditions at or near OU4 that may present an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at or from OU4.

**JURISDICTION AND VENUE**

2.  This Court has jurisdiction over the subject matter of this action under Sections 106, 107, and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607, and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3.  Venue is proper in this judicial district under Sections 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b)-(c), because the claims arose and the releases and threatened releases of hazardous substances that gave rise to these claims occurred in this district.

**DEFENDANTS**

*Generator Defendants*

4.  Defendant Atos IT Solutions and Services, Inc. ("Atos") is a Delaware corporation that does business in Massachusetts. At relevant times, Atos, or its predecessor entity, has owned or operated electronics research, development, and manufacturing facilities in Billerica and Brighton, Massachusetts, and a facility with a machine shop, paint shop, and photo laboratory, in Waltham, Massachusetts, each of which used, or generated waste containing, hazardous substances.

5.  Defendant BASF Corporation ("BASF") is a Delaware corporation that does business in Massachusetts. Defendant Cognis USA LLC ("Cognis") is a limited liability company and a wholly owned subsidiary of BASF. At relevant times, BASF or its predecessor entity, and Cognis or its predecessor entity, each has owned or operated a leather treatment facility in Saugus, Massachusetts, that used, or generated waste containing, hazardous substances.

6.      Defendant The Gillette Company ("Gillette") is a Delaware corporation that does business in Massachusetts. At relevant times, Gillette, or its predecessor entity, owned or operated toiletry product manufacturing facilities in Boston and Andover, Massachusetts, that used, or generated waste containing, hazardous substances.

7.      Defendant Goulston Technologies, Inc. ("Goulston") (f/k/a George A. Goulston Co., Inc.) is a Delaware corporation that does business in Massachusetts. At relevant times, Goulston, or its predecessor entity, owned or operated a facility for the manufacture of textile fiber lubricants, located in Scituate, Massachusetts, that used, or generated waste containing, hazardous substances.

8.      Defendant Pharmacia LLC ("Pharmacia") is limited liability company organized under the laws of Delaware that does business in Massachusetts. Upon information and belief, Monsanto Company ("Monsanto") is Pharmacia's attorney-in-fact. Monsanto is a Delaware Corporation with its principal place of business in St. Louis, Missouri. At relevant times, Pharmacia, or its predecessor entity, owned or operated a facility for the manufacture of textile fiber lubricants, located in Scituate, Massachusetts, and chemical manufacturing facilities located in Everett and Indian Orchard, Massachusetts, each of which used, or generated waste containing, hazardous substances.

9.      Defendant NSTAR Electric Company d/b/a Eversource Energy ("NSTAR"), formerly known as Boston Edison Company, is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. At relevant times, NSTAR, or its predecessor entity, has been an investor-owned utility that supplies electricity to Boston, Massachusetts, and about three dozen surrounding municipalities, that owned or operated (a) generating stations located in Boston (Kneeland Street), South Boston (Summer Street), Charlestown, Plymouth, and

Weymouth, Massachusetts; (b) electricity service stations with vehicle maintenance facilities, located in Dorchester, Woburn, Maynard, Hyde Park, Somerville, Waltham, Walpole, Framingham, and Watertown, Massachusetts; and (c) electrical substations, located in Watertown, Somerville, Cambridge, Framingham, Walpole, West Medway, Waltham, Woburn, Natick, Canton, Dover, Holbrook, Boston, Brighton, Dorchester, Hyde Park, West Roxbury, Newton Centre, Newton Highlands, and Lexington, Massachusetts.  At relevant times, each of these generating stations, service stations, and substations used, or generated waste containing, hazardous substances.

10. Defendant Organix, LLC ("Organix") is a limited liability company organized under the laws of Massachusetts with its principal place of business in Woburn, Massachusetts. At relevant times, through the present day, Organix has owned or operated a portion of the property formerly operated as the John J. Riley Tannery, located at 240 Salem Street, in Woburn, Massachusetts, from which hazardous substances migrated to OU4, as described in Paragraphs 41-43, below.

11. Defendant OSRAM SYLVANIA, Inc. ("OSRAM SYLVANIA ") is a Delaware corporation with its principal place of business in Danvers, Massachusetts.  At relevant times, OSRAM SYLVANIA, or its predecessor entity, owned or operated a facility for the manufacture of electrical components, located in Woburn, Massachusetts, that used, or generated waste containing, hazardous substances.

12. Defendant The Sherwin-Williams Company ("Sherwin-Williams") is a Delaware corporation that does business in Massachusetts.  At relevant times, Sherwin-Williams, or its predecessor entity, owned or operated facilities for the manufacture of wood stains, located in

5

Chelsea and Newburyport, Massachusetts, each of which used, or generated waste containing, hazardous substances.

13. Defendant Stepan Company ("Stepan") is a Delaware corporation that does business in Massachusetts. At relevant times, including 1968 to 1980, Stepan, or its predecessor entity, owned or operated a facility for the production of chemical additives for rubber and plastics processing, located in Wilmington, Massachusetts, that used, or generated waste containing, hazardous substances.

14. Defendant Varian Medical Systems, Inc. ("Varian") is a California corporation that does business in Massachusetts. At relevant times, Varian, or its predecessor entity, owned or operated facilities for the production of vacuum pumps and components, located in Lexington and Burlington, Massachusetts, and a facility for the production of electron devices, located in Beverly, Massachusetts, each of which used, or generated waste containing, hazardous substances.

15. Defendant W.R. Grace & Co. – Conn. ("Grace") is a Delaware corporation that does business in Massachusetts. At relevant times, Grace, or its predecessor entity, owned or operated facilities for the manufacture of colorants, coatings, adhesives, chemicals, and other products, located in Lexington (Hayden Avenue and Hartwell Avenue), Cambridge, and Billerica, Massachusetts, and Nashua, New Hampshire, each of which used, or generated waste containing, hazardous substances.

*Owner/Operator Defendants*

16. Defendant 280 Salem Street, LLC ("280 Salem Street") is a limited liability company organized under the state laws of Massachusetts with its principal place of business in

Woburn, Massachusetts. 280 Salem Street is the current owner of real property within OU4, including parcels located at 270 and 280 Salem Street, Woburn, Massachusetts (the "Aberjona Property"), described below.

17. Defendant Murphy's Waste Oil Service, Inc. ("Murphy's Waste Oil") is a Massachusetts corporation with its principal place of business in Quincy, Massachusetts. At relevant times, including 1977 to the present, Murphy's Waste Oil has owned or operated real property within OU4, located at 250 and 252 Salem Street, Woburn, Massachusetts (the "Murphy Property"), described below.

18. Defendant ConAgra Grocery Products Company, LLC ("ConAgra") is a limited liability company organized under the laws of Delaware. At relevant times, including 1978 to 1983, ConAgra, or its predecessor entity, owned or operated real property within OU4, including the portion of the Murphy Wetland within the Wildwood Source Area Property (the "Wildwood Property"), at the time of disposal of hazardous substances there. At relevant times, including 1978 to 1983, ConAgra, or its predecessor entity, owned or operated the former John J. Riley Tannery, encompassing 15.8 acres located at 228 Salem Street (which was later subdivided into 240 Salem Street and five other parcels), in Woburn, Massachusetts, and the 14.73 acres of land located at Salem Street Rear, in Woburn, Massachusetts, known as the Wildwood Property (collective, the "Tannery Property").

## GENERAL ALLEGATIONS

*Defendants*

19. Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

20. At relevant times, Atos, BASF, Cognis, Gillette, Goulston, NSTAR, Pharmacia, Sherwin-Williams, Stepan, Organix, OSRAM SYLVANIA, Varian, and Grace (collectively, "Generator Defendants"), and/or their predecessor entities, are each a company or other entity that owned or possessed hazardous substances and by contract, agreement, or otherwise, arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, at OU4 of hazardous substances, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

21. At relevant times, 280 Salem Street and Murphy's Waste Oil each is a current owner or operator of a portion of OU4, within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

22. At relevant times, ConAgra, and/or its predecessor entity, was an owner or operator of a portion of OU4 at the time that hazardous substances were disposed of at that portion, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

*The Site and Operable Unit 4*

23. The Wells G&H Superfund Site is located on approximately 330 acres in Woburn, Massachusetts. The Site is in the Aberjona River Valley, bounded by Route 128 / Interstate 95 to the north, the Boston and Maine Railroad right-of-way to the west, and Salem Street, Cedar Street, and Interstate 93 to the south.

24. Between 1964 and 1979, the Site included two wells, known as Wells G and H, that provided approximately 25 percent of the drinking water for the Town of Woburn, Massachusetts. In 1979, the State closed these wells after determining that the water they contained was contaminated with chlorinated solvents.

25.     OU4 of the Site is located on approximately 13.3 acres in the southwestern portion of the Site.  OU4 includes all areas where response action is necessary under the Record of Decision ("ROD"), signed on September 29, 2017, by the Director of the former Office of Site Remediation and Restoration (now the Superfund and Emergency Management Division), EPA Region 1, including three properties known as the Aberjona Property, the Whitney Property (defined in Paragraph 31, below), and the Murphy Property, and a wetland area known as the Murphy Wetland.  The Murphy Wetland extends along the northern border of the Whitney and Murphy Properties and encompasses portions of each of those properties and of the Wildwood Property immediately to the north.  Each of these areas of OU4 is described further below.

*Murphy Property*

26.     The Murphy Property is comprised of approximately 4.14 acres located at 250 and 252 Salem Street, Woburn, Massachusetts.

27.     Since July 1977, Murphy's Waste Oil has operated the Murphy Property as a waste oil storage, handling, and transfer facility.

28.     Between 1977 and 1989, Murphy's Waste Oil disposed of hazardous substances at the Murphy Property, including, *e.g.*, waste oil, in an unlined "oil pit."

29.     From 1977 to 1980 or 1981, Murphy's Waste Oil also spread waste oils on dirt roadways on the Murphy Property.

30.     Investigations of the Murphy Property by or on behalf of EPA discovered, without limitation, hazardous substances in upland soils, wetland sediments and soils, and groundwater, including without limitation, VOCs, SVOCs, waste oil, PCBs, and metals.

*Whitney Property*

31.     The Whitney Barrel Company, Inc. (now dissolved) formerly operated a 2.67-acre property located at 256 Salem Street, in Woburn, Massachusetts (the "Whitney Property").

32.     From approximately 1950 through 1985, a former drum, barrel, tank, and machinery reconditioning and distribution facility ("Whitney Barrel facility") was operated on the Whitney Property.

33.     Operations at the Whitney Barrel facility included, without limitation, cleaning, reconditioning, and painting drums, barrels, tanks, and machinery for resale; discharging drum waste and cleaning fluids, including hazardous substances such as trisodium phosphate, flake caustic soda, and trichloroethylene ("TCE"), into a floor drain connected to a sewer system from which hazardous substances were released into the environment through overflows and exfiltration; releases of VOCs, oil, and grease through a manhole to the sewer system from which hazardous substances were released into the environment; and releases of waste from drums, barrels, and tanks onto the open ground.  On several occasions, including in 1965, 1973, 1977, and 1978 or 1979, there were fires that sometimes caused explosions at the Whitney Property, which required the spraying of large quantities of water to suppress.  Upon information and belief, these fires, explosions, and fire-fighting activities spread hazardous substances around the Whitney Property.

34.     Between 1950 and 1985, hazardous substances were released and disposed of at or from the Whitney Property.

35.     Since that time, investigations performed by or on behalf of EPA discovered hazardous substances in soils, wetlands, sediments, and groundwater at the Whitney Property,

including, without limitation, VOCs, SVOCs, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbons ("PAHs"), pesticides, and metals.

36.     The hazardous substances found at the Whitney Property included the same types of hazardous substances as were used, handled, or generated at relevant times, at facilities in Massachusetts owned or operated by Defendants Atos, BASF, Cognis, Gillette, Goulston, NSTAR, Pharmacia, Sherwin-Williams, Stepan, Organix, OSRAM SYLVANIA, Varian, Grace, or their predecessor entities.

*Aberjona Property*

37.     The Aberjona Property is comprised of approximately 6.51 acres located at 270 and 280 Salem Street, Woburn, Massachusetts.

38.     280 Salem Street acquired title to the Aberjona Property in September 2001 and has owned the property continuously since that time.

39.     From the mid-1950s to at least the late 1990s, an automobile repair and salvage facility was operated on the Aberjona Property.  These operations, since the mid-1950s, have included, without limitation:  the dismantling, storage, and burning of several hundred junked automobiles, automobile parts, and associated debris; the removal and storage on-Site, in, *e.g.*, underground storage tanks ("USTs"), of gasoline, waste oil, and anti-freeze; the separation of oil and water; the degreasing of used automobile parts using, *e.g.*, volatile organic compounds ("VOCs"); discharges from a "grease pit" located in the floor of a garage, where degreasing was conducted, through a drain to a sewer, from which releases occurred due to overflows and exfiltration; storage of gasoline in at least one or two USTs of gasoline from the property's prior use as a gas station.

40. These activities resulted in widespread contamination at and from the Aberjona Property. Soils, groundwater, and other media at this property are contaminated with hazardous substances, including, without limitation, VOCs, semi-volatile organic compounds ("SVOCs"), PCBs, PAHs, TCE, waste oil, and metals.

*Tannery Property*

41. From 1915 through 1989, the Tannery Property (defined in Paragraph 18, above) was used as a leather tannery, known as the John J. Riley Tannery.

42. In October 1997, Organix acquired title to a lot on the Tannery Property, located at 240 Salem Street, Woburn, Massachusetts, and has owned this lot continuously since that time.

43. Upon information and belief, during Organix's ownership period, hazardous substances migrated from the Tannery Property, including the lot at 240 Salem Street owned by Organix, to OU4, including to the Murphy Wetland.

*Murphy Wetland*

44. The Murphy Wetland, encompasses approximately 1.3 acres extending along the northern border of the Murphy, Whitney, and Aberjona Properties, including portions of those three properties and of the Wildwood Property to the north.

45. At relevant times, investigations by or on behalf of EPA found hazardous substances in the Murphy Wetland sediments and soils, including PAHs, PCBs, VOCs, and metals (*e.g.,* chromium, arsenic, manganese, mercury, and lead). The hazardous substances found at the Murphy Wetland included the same types of hazardous substances as were used or generated, at relevant times, at the Murphy, Whitney, Aberjona, and Tannery Properties.

*Groundwater*

46. Groundwater flow in OU4 is generally from southwest to northeast across the Murphy, Whitney, and Aberjona Properties, from the Tannery Property to the west towards the Aberjona River to the east. Hazardous substances have migrated from the Murphy, Whitney, and Aberjona Properties and from the Murphy Wetland to groundwater at OU4.

47. Investigations of OU4 found hazardous substances in groundwater, including without limitation, VOCs, SVOCs, PCBs, pesticides, and metals. These hazardous substances include the same types of hazardous substances as were released at and from the Aberjona, Whitney, and Murphy Properties, as described above.

*Response Actions at OU4*

48. In September 1983, pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA listed the Site, including OU4, on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, by publication in the *Federal Register*, 48 *Fed. Reg.* 40,658-73 (Sept. 8, 1983). The NPL is a list of sites at which there have been releases or threatened releases of hazardous substances, pollutants, or contaminants that EPA has ranked as the highest priority for response action of all such sites in the country, based on the relatively high risks such releases or threatened releases pose to public health, welfare, or the environment.

49. In 2006, EPA and Organix entered into an Administrative Order by Consent ("AOC"), under which EPA conducted a removal action on the Organix property, pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604. This removal action included, without limitation, excavation and offsite disposal of soil containing hazardous substances, including, *e.g.*, chromium, along the swale connecting the Tannery Property and the Murphy Wetland, and stabilization of the swale.

50. On September 29, 2017, EPA issued a ROD for OU4. The ROD selected a remedial action for OU4, including: excavation and off-site disposal of contaminated soil, non-aqueous phase liquid ("NAPL") and NAPL-impacted soil, backfilling excavated areas with clean soil, constructing impermeable caps, pumping and treating contaminated groundwater, excavation and off-site disposal of contaminated wetland sediment/soil, wetland restoration, operation and maintenance, long-term monitoring, five-year reviews, and institutional controls.

51. To date, the United States has incurred at least $1.1 million in unreimbursed response costs relating to OU4.

## FIRST CLAIM FOR RELIEF

### (Cost Recovery Under Section 107(a) of CERCLA)

52. Paragraphs 1 through 51 are realleged and incorporated herein by reference.

53. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances,

\* \* \*

shall be liable for –

    (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the National Contingency Plan . . . .

54. OU4 is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

55. At times relevant to this action, there has been a "release" or threatened release of "hazardous substances" into the environment at or from OU4, within the meaning of Sections 101(14) and (22) of CERCLA, 42 U.S.C. §§ 9601(14) and (22), including, without limitation, VOCs, SVOCs, PCBs, pesticides, and metals.

56. The United States has incurred and will continue to incur "response costs," within the meaning of CERCLA Sections 101(25) and 107(a), 42 U.S.C. §§ 9601(25) and 9607(a), for actions taken in response to the release or threatened release of hazardous substances at or from OU4, including, without limitation: (a) costs of overseeing past investigations, studies, and response actions implemented by certain Defendants; (b) costs of enforcement actions by the United States; and (c) costs of overseeing remedial work selected in the ROD.

57. The United States' response actions taken or to be taken at or in connection with OU4, and the costs incurred or to be incurred related thereto, are not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan (the "National Contingency Plan"), promulgated under Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

58. Each of the Generator Defendants is within the class of liable persons described in Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), because each arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, at OU4 of hazardous substances that they owned or possessed, or is a successor in interest to such a person.

59. 280 Salem Street and Murphy's Waste Oil each is within the class of liable persons described in Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), because it owns or operates a facility within OU4.

60. ConAgra and Murphy's Waste Oil each is within the class of liable persons described in Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), because it owned or operated a facility within OU4 at the time hazardous substances were disposed of at such facility.

61. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a), all Defendants are liable to the United States, jointly and severally, for the response costs incurred and to be incurred by the United States in connection with OU4, including enforcement costs and prejudgment interest on such response costs.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment Under Section 113(g)(2) of CERCLA)**

62. Paragraphs 1 through 61 are realleged and incorporated herein by reference.

63. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part:

In any such action [for the recovery of response costs under Section 9607(a)], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

64. The United States is entitled to a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), against all Defendants, jointly and severally, on liability for future response costs that will be binding on any subsequent action or actions to recover future response costs incurred by the United States in connection with OU4.

## THIRD CLAIM FOR RELIEF

### (Injunctive Relief Under Section 106 of CERCLA)

65. Paragraphs 1 through 64 are realleged and incorporated herein by reference.

66. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is authorized to seek injunctive relief necessary to abate the imminent and substantial endangerment to the public health or welfare, or the environment, that may result from an actual or threatened release of a hazardous substance at or from a facility.

67. The President, through his delegate, the Regional Administrator of EPA Region 1, has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of actual and threatened releases of hazardous substances into the environment at or from OU4.

68. Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), all Defendants are liable, jointly and severally, for injunctive relief to abate the conditions at OU4 that present or may present an imminent and substantial endangerment to the public health or welfare or the environment.

69. EPA has determined that the remedy selected in the ROD is necessary to abate an imminent and substantial endangerment to public health or welfare or the environment posed by the release and threatened release of hazardous substances at OU4.

70. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), all Defendants are liable, jointly and severally, to perform the remedial action selected in the ROD.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America respectfully requests that this Court:

1.	Order Defendants, jointly and severally, to reimburse the United States for all costs incurred and to be incurred by the United States, including enforcement costs and prejudgment interest, for response actions taken in connection with OU4 of the Wells G&H Superfund Site, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

2.	Enter a declaratory judgment in favor of the United States, against all Defendants, that all Defendants are liable, jointly and severally, for future response costs incurred by the United States in connection with OU4 of the Wells G&H Superfund Site, that will be binding on any subsequent action or actions to recover such response costs, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

3.	Order Defendants, jointly and severally, to perform the remedial action selected by EPA in its Record of Decision issued on September 29, 2017, to abate conditions at OU4 that may present an imminent and substantial endangerment to the public health or welfare or the environment, in a manner consistent with the National Contingency Plan, 40 C.F.R. Part 300, pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606;

4.	Award the United States its costs and fees in this action; and

5.	Grant the United States such other and further relief as the Court deems appropriate.

                Respectfully submitted,

                JEFFREY BOSSERT CLARK
                Assistant Attorney General
                U.S. Department of Justice
                Environment and Natural Resources Division
                Environmental Enforcement Section

Dated:  July 14, 2020                    /s/ *David Laufman Weigert*
                                         DAVID LAUFMAN WEIGERT
                                         Senior Counsel
                                         U.S. Department of Justice
                                         Environment and Natural Resources Division
                                         Environmental Enforcement Section
                                         P.O. Box 7611 Ben Franklin Station
                                         Washington, DC 20044-7611
                                         Phone:  (202) 514-0133
                                         Fax:  (202) 616-2427
                                         david.weigert@usdoj.gov

                                         ANDREW E. LELLING
                                         United States Attorney
                                         District of Massachusetts

                                         MARY B. MURRANE
                                         Chief, Civil Division
                                         United States Attorney's Office
                                         District of Massachusetts
                                         John Joseph Moakley US Federal Courthouse
                                         1 Courthouse Way, Suite 9200
                                         Boston, MA 02210
                                         (617) 748-3100

OF COUNSEL:

SUSAN SCOTT
MAN CHAK NG
Senior Enforcement Counsel
USEPA REGION 1 - New England
5 Post Office Square
Mail Code: OES04-2
Boston, MA 02109-3912